**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| G50 PRODUCTION, INC., 141 COIT STREET, LLC, and CHARLES N. OKORO, | **Civil Action No. 25-2347 (ES) (JSA)** |
| **Plaintiffs,** | **OPINION** |
| **v.** | |
| **IRVINGTON TOWNSHIP,** *et al.*, | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendants' motion to dismiss Plaintiffs' Complaint (D.E. No. 1 ("Complaint" or "Compl.")), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (D.E. No. 8 ("Motion")).[1] The Court has carefully reviewed the Complaint and the parties' submissions in support of and in opposition to the Motion (*see generally* D.E. No. 8-1 ("Mov. Br."); D.E. No. 11 ("Opp. Br."); D.E. No. 12 ("Reply Br.")), and decides the matter without oral argument, *see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss Counts Six and Thirteen, and those counts are **DISMISSED** *without prejudice*. The balance of Defendants' Motion is **DENIED** as moot.

---

[1] Defendants include Irvington Township, John Sowell (Zoning Officer), Irvington Township Police Department, Officer Owens, Officer Shawn Stewart, and Officer Ramiro Rodriguez (together, "Defendants"). Although the summons issued as to defendant Derrick James (Former Zoning Officer), and the parties' stipulation for extending the time to answer included all Defendants (*see* D.E. No. 6), there is no proof of service or attorney appearance on behalf of Mr. James. Plaintiffs include G50 Production, Inc., 141 Coit Street LLC, and Charles Nnanna Okoro, also known as "Nnanna Okoro" (collectively, "Plaintiffs").

I.    BACKGROUND[2]

According to the Complaint, Plaintiffs purchased property located in Irvington, New Jersey, which they originally operated as a bottled water production company before converting it into an event hall.  (Compl. ¶¶ 1, 6 & 11).  Plaintiffs applied for, and received, a zoning permit, certificate of occupancy, and various other certifications to run the event hall, which they successfully operated from 2017 to 2023.  (*See, e.g.*, *id.* ¶¶ 9–14, 22–24 & 29–30).  Plaintiffs maintain that they did not "sell or serve" alcoholic beverages at the event hall; however, they notified renters that alcohol could be served "if ABC Permit is provided."  (*Id.* ¶ 15).

In or about October 2021, Irvington Township Police Department arrested plaintiff Nnanna Okoro for allegedly showing the arresting officer(s) a "forged ABC Permit provided by a person renting the event hall that night."  (*Id.* ¶ 16).  Sometime thereafter, the Essex County Prosecutor's Office ("ECPO") formally charged plaintiff Okoro in connection with this alleged conduct.  (*Id.* ¶¶ 17–18).  On February 18, 2022, the ECPO dismissed the charges "for lack of probable cause."  (*Id.* ¶ 19).

In addition, "in approximately 2021," Plaintiffs[3] allegedly purchased a liquor license using plaintiff Okoro's residential address.  (*Id.* ¶ 20).  Shortly thereafter, Plaintiffs applied to transfer their liquor license from plaintiff Okoro's residence to the event center, specifically "137-141 Coit Street/1138 Grove Street, Irvington, New Jersey 07111" (hereafter, the "Property").  (*Id.* ¶ 21).

---

[2]    For purposes of the instant Motion, the Court accepts the factual allegations as true and draws all inferences in the light most favorable to Plaintiffs.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  The Court makes certain observations herein regarding factual gaps that would benefit from further clarity in an amended pleading.

[3]    The Court observes that "Plaintiffs" consist of two legal entities and one individual.  Although the Complaint initially states that all Plaintiffs applied for this liquor license, subsequent paragraphs indicate that the license belongs to only one "plaintiff."  (*Compare* Compl. ¶¶ 20–21, *with* ¶ 25).  Any forthcoming amended complaint would benefit from clearly delineating which plaintiff(s) are associated with each specific allegation to avoid potential group pleading issues.

2

On March 21, 2023, the Irvington Township Zoning Board of Adjustment allegedly "*sua sponte* adopted a resolution to withdraw plaintiff's application to place a liquor license" at the aforementioned property without prejudice "because the Board erroneously required plaintiff to amend the application to seek a D(1) use variance (to ask for zoning permit), despite the property already having the Zoning Permit and Certificate of Occupancy."  (*Id.* ¶ 25).

On May 16, 2023, the Irvington Township attorney issued a "notice of hearing" regarding the liquor license transfer application; the application was denied on the same day, and Plaintiffs had no opportunity to participate in the hearing.  (*Id.* ¶¶ 26–27).  Plaintiffs maintain that the township denied the application in-part because Sergeant Ramiro Rodriguez wrote a memo to the township's planning and zoning boards, dated December 2, 2022, in which he opposed the transfer. (*Id.* ¶ 28).

Following the denial of the transfer application, specifically on July 1, 2023, Plaintiffs claim that a client rented the event hall for "her child's first birthday and christening party."  (*Id.* ¶ 29).  "[A]t approximately 12:30 a.m." during that celebration, Plaintiffs allege that Irvington Police Officer, Sergeant Owens, appeared unannounced at the event hall.  (*Id.*).  Next, Plaintiffs assert that on the same night, "[a]t the time of shutting down Plaintiffs' Event Hall, Irvington Police Officer Shawn Stewart . . . issued a summons and citation to Plaintiffs alleging that Plaintiffs broke the law by permitting 'an event at [the Property], without being duly licensed for such purpose.'"[4]  (*Id.* ¶ 30).  Plaintiffs believe that the shutdown did not involve any issues associated with alcoholic beverages because "no alcohol was served when [the event hall] was shut down." (*Id.* ¶ 31).  According to the Complaint, there are roughly twenty similar facilities within two miles

---

[4]    It is unclear whether Sergeant Owens arrived together with Officer Stewart or whether the former had any involvement in the summons and citation that Officer Stewart issued.

of the Property that are used as event halls and remained open during the relevant period.  (*Id.* ¶ 48).

Plaintiffs further assert that prior to the event hall's closure on July 1, 2023, they did not receive a cease-and-desist order, a citation, or any advanced warning from Irvington Township or the Irvington Township Police Department.  (*Id.* ¶ 32).  Although plaintiff Okoro reached out to Irvington Township to ask why the closure occurred notwithstanding the event hall's initial permit dated 2017, and yearly renewals through 2023, he received no justification for the shutdown "other than that there was no permit for the [e]vent center."  (*Id.* ¶ 33).  On or about July 5, 2023, "[p]laintiff spoke with [Sergeant] Owens to understand the reason he shut down the event center . . . and was told . . . that John Sowell, Irvington Zoning Officer, was the one that instructed [Sergeant] Owens to shut down [p]laintiff's event center."  (*Id.* ¶ 34).  On July 7, 2023, plaintiff Okoro approached John Sowell to discuss the closure; in response, John Sowell gave plaintiff Okoro a printed copy of a notice to cease and desist dated July 7, 2023, which barred "any further use or rental of the event center."  (*Id.* ¶ 35).  The cease-and-desist notice states that "[p]laintiff's application to operate an event center was denied in 2014."  (*Id.* ¶ 36).

On or about July 13, 2023, counsel for "[p]laintiff" wrote to Irvington Township regarding the improper closure of the event hall and "demand[ed] an explanation."  (*Id.* ¶ 38).  Irvington Township replied noting that "the use of the property as a banquet hall was an unapproved use of the property."  (*Id.* ¶ 39).

On December 13, 2023, the Irvington Township Municipal Court dismissed the July 1, 2023 citation for lack of foundation; specifically, the municipal court found that "Plaintiffs had a license to operate the banquet hall from 2017 through 2023," including an active license on July 1, 2023, when the event hall shutdown.  (*Id.* ¶¶ 40 & 43; *but see id.* ¶ 43 (alleging that the July 1,

2023 citation was dismissed on December 13, 2023, "on *prosecutorial discretion*" because "plaintiff introduced" a zoning permit for the Property (emphasis added))).

On October 15, 2023, Irvington Township issued a citation against plaintiff Okoro claiming that he operated the Property without a Certificate of Occupancy. (*Id.* ¶¶ 42 & 44). This citation was dismissed on April 17, 2024, after "plaintiff showed proof of his Certificate of Occupancy" for the Property, which had issued in 2017. (*Id.* ¶ 45).

The Complaint states that "Plaintiff" served a "Notice of Tort Claim on [ ] Irvington Township with a cover letter dated March *14*[,] 2024." (*Id.* ¶ 46 (emphasis added)). Immediately thereafter, the Complaint states that "[a] copy of the Notice of Tort Claim with cover letter dated March *19*, 2024 is attached as Exhibit R." (*Id.* (emphasis added)). The only document included in Exhibit R is a cover letter dated March 19, 2024. (D.E. No. 1-19). Furthermore, the cover letter does not set forth the claims that are the subject of the notice. (*See generally id.*).

Based on these allegations, Plaintiffs raise thirteen counts in the Complaint, including: (i) declaratory judgment (Count One); (ii) "violation of Plaintiffs' procedural due process rights under the Fifth and the Fourteenth Amendments, and 42 U.S.C. § 1983" (Count Two); (iii) "violation of Plaintiffs' substantive due process rights under the Fifth and Fourteenth Amendments, and 42 U.S.C. § 1983 (Count Three); (iv) "false arrest under 42 U.S.C. § 1983" (Count Four); (v) "malicious prosecution of plaintiff, Nnanna Okoro, in violation of the Fourth, Fifth and Fourteenth Amendment, and 42 U.S.C. § 1983" (Count Five); (vi) "conspiracy by defendants to violate Plaintiffs' civil rights in violation of 42 U.S.C. § 1983" (Count Six); (vii) "42 U.S.C. § 1983 Selective Enforcement Denial of Equal Protection Rights" (Count Seven); (viii) "42 U.S.C. § 1983 Class-of-One denial of Equal Protection Rights" (Count Eight); (ix) "violation of the Fifth

Amendment Tak[ings] clause by Defendants" (Count Nine); (x) "NJCRA[5] Selective Enforcement Denial of Equal Protection" (Count Ten); (xi) "NJCRA Class-of-One Denial of Equal Protection" (Count Eleven); (xii) "common law false arrest against all Defendants" (Count Twelve); and (xiii) "common law malicious prosecution against all Defendants" (Count Thirteen). (Compl. ¶¶ 66–157).

On July 3, 2025, Defendants moved to dismiss Counts One, Four, Six, Twelve, and Thirteen. (*See generally* Mov. Br.). Plaintiffs opposed the dismissal of Counts Six and Thirteen only. (*See generally* Opp. Br.). Defendants filed a reply in further support of their motion to dismiss, focusing on Counts Six and Thirteen. (*See generally* Reply Br.).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). This pleading standard does not require detailed factual allegations; it does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). In addition, the plaintiff's short and plain statement of the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

For a complaint to survive dismissal under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). A claim is plausible on its face when "the plaintiff

---

[5]    Although not explicitly defined in the Complaint, the Court interprets Counts Ten and Eleven as falling under the New Jersey Civil Rights Act. (*See* Compl. ¶¶ 132–35).

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (internal citation omitted). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). Further, a complaint may be considered frivolous where it relies on an "'indisputably meritless legal theory' or a 'clearly baseless' or 'fantastic or delusional' factual scenario." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989)).

While the Court typically "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), exceptions to that general rule also permit consideration of "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'" (alteration in original) (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004))). Thus, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-

7

16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

### III.    DISCUSSION

Defendants move to dismiss Counts One, Four, Six, Twelve, and Thirteen on multiple grounds.  (Mov. Br. at 4–10).  ***First***, Defendants contend that Count One should be dismissed because there is no private right of action for a declaratory judgment.  (*Id.* at 4–5).  ***Second***, Defendants argue that Counts Four and Six should be dismissed because the two-year statute of limitations expired for false arrest and malicious prosecution claims under 42 U.S.C. § 1983.  (*Id.* at 5–7).  ***Third***, Defendants maintain that Counts Twelve and Thirteen should be dismissed because Plaintiffs failed to serve a notice of claim on Defendants by the appropriate deadlines.  (*Id*. at 7–8).  ***Finally***, with respect to Count Six, Defendants also argue that Plaintiffs fail to sufficiently allege a Section 1983 conspiracy claim because the Complaint lacks allegations that reflect an agreement amongst Defendants to act with the intent to harm Plaintiffs.  (*Id.* at 8–10).

At the outset, the Court recognizes that Plaintiffs agreed to dismiss Counts One, Four, and Twelve of the Complaint "for the reasons stated by [D]efendants in their [M]otion."  (Opp. Br. at 2).  Thus, Counts One, Four, and Twelve are deemed **WITHDRAWN** and Plaintiffs shall file an amended pleading that reflects the same.  Accordingly, Defendants' motion to dismiss Counts One, Four, and Twelve of the Complaint is **DENIED** as moot.

Next, Defendants maintain that Count Six should be dismissed based on the two-year statute of limitations for false arrest and malicious prosecution claims under Section 1983.[6]  (Mov. Br. at 5–7 (citing cases)).  Specifically, Defendants argue that the false arrest claim accrued in October 2021, and expired in October 2023—two years from the date of plaintiff Okoro's arrest.

---

[6]    Defendants do not make any distinctions regarding Counts Four and Six in their arguments for dismissal based on the statute of limitations.  (*See* Mov. Br. at 5–7).

(*Id.* at 6).  Similarly, they argue that the Section 1983 malicious prosecution claim accrued on February 18, 2022—the date the ECPO dismissed charges against plaintiff Okoro—and expired on February 18, 2024.  (*Id.*).  Plaintiffs oppose, arguing that the accrual date for Count Six began when the event hall closed on July 1, 2023.  (Opp. Br. at 2–3).  Defendants also argue, however, that Count Six should be dismissed for failure to state a claim.  (*Id.* at 8–10).  Plaintiffs do not respond to Defendants' Rule 12(b)(6) argument.  (*See generally* Opp. Br.; *see also* Reply Br. at 2).

Under Count Six, Plaintiffs maintain that Defendants conspired to violate their civil rights in violation of Section 1983 based, in large part, on the circumstances surrounding the event hall's closure on July 1, 2023.  (*See* Compl. ¶¶ 102–12).  Plaintiffs also allege, however, that "the arrest of plaintiff [Okoro], and issuance of three citations despite lack[ing] [ ] any basis whatsoever for the arrest or [ ] the citations, are []other conspiratorial actions by the [D]efendants."  (*Id.* ¶ 113).

Notwithstanding the accrual period associated with the allegations in Count Six, the Court agrees that Plaintiffs fail to state a Section 1983 claim for conspiracy.  Civil rights conspiracies brought under Section 1983 require a "meeting of the minds," and to survive screening or a motion to dismiss, plaintiffs must provide some factual basis to support the existence of the elements of a conspiracy, namely, an agreement and concerted action.  *See Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

As reflected above, although the Complaint sets forth a series of actions against Plaintiffs with respect to their operation of the Property as an event hall, the pleading does not contain any alleged facts that reflect a meeting of the minds between any of the Defendants.  (*See generally* Compl.).  Likewise and relatedly, there are no allegations that reflect an agreement or concerted actions among the Defendants with respect to their dealings with Plaintiffs.  (*See generally id.*).  For these reasons alone, Count Six is **DISMISSED** *without prejudice.  See Great W. Mining &*

*Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) ("[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred"); *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (noting that conspiracy claims cannot be based "merely upon . . . suspicion and speculation" and stating that general allegations of conspiracy not grounded in facts are conclusions of law that do not state a claim for relief).

With respect to Count Thirteen, alleging common law malicious prosecution, Defendants argue that the claim should be dismissed under the New Jersey Tort Claims Act ("NJTCA") because Plaintiffs failed to submit a notice of claim within ninety days of the applicable accrual dates. (Mov. Br. at 7–8). Relevant here, Plaintiffs' common law malicious prosecution claim is subject to the requirements of the NJTCA. Specifically, the NJTCA "requires plaintiffs to submit a notice of the common law tort claim to the defendant public entity within ninety days of the claim's accrual and file suit within two years after the claim's accrual." *Lee v. Gallina-Mecca*, No. 23-6495, 2025 WL 1604086, at *6 (D.N.J. June 6, 2025) (citing N.J. Stat. Ann. § 59:8–8(a–b)). Courts in this District have held that under the NJTCA, claims accrue on the date of the accident or incident at issue that gives rise to an injury, however slight. *Noble v. City of Camden*, 112 F. Supp. 3d 208, 233–34 (D.N.J. 2015) ("reject[ing] [p]laintiff's argument that the claims did not accrue until June 21, 2013, after the criminal charges against [p]laintiff were dismissed" (citing *Beauchamp v. Amedio*, 751 A.2d 1047, 1052 (N.J. 2000))); *see also Palafox v. Cnty. of Warren*, No. 12-7895, 2014 WL 674041, at *9 (D.N.J. Feb. 21, 2014) ("[I]t is undisputed that [p]laintiff was arrested on January 17, 2010. This is the date under which the cause of action for [p]laintiff's tort claims accrued under the NJTCA. Therefore, [p]laintiff's time limit to file a Tort Claims Notice was up to and including April 17, 2010."). Other courts have found, however, that

10

malicious prosecution claims accrue under the NJTCA on the date charges are dismissed.  *See, e.g.*, *Mack v. City of Newark*, No. 15-2672, 2015 WL 5110494, at *4 (D.N.J. Aug. 31, 2015) ("Plaintiff's remaining state causes of action accrued at the latest on July 10, 2013–the date when the charges were dropped and [p]laintiff was released."); *see also Castillo-Perez v. City of Elizabeth*, No. 11-6958, 2014 WL 1614845, at *11 (D.N.J. Apr. 21, 2014) ("Castillo–Perez's malicious prosecution tort claim accrued on April 11, 2011, the date that the charges were dismissed.").  As explained below, whether Plaintiffs' common law malicious prosecution claims accrued on the date of the incident or at the time of dismissal, Count Thirteen is time-barred.

Defendants argue that notice for the October 2021 prosecution of plaintiff Okoro—which accrued, at the latest, on the date of dismissal, *i.e.*, February 18, 2022—was due within ninety days, or by May 18, 2022.  (*Id.* at 7).  Next, they maintain that notice for the July 1, 2023 citation— which accrued, at the latest, on the date of dismissal, *i.e.*, December 13, 2023—was due within ninety days, or by March 13, 2024.  (*Id.*).  Lastly, Defendants assert that notice for the October 15, 2023 citation—which accrued, at the latest, on the date of dismissal, *i.e.*, April 17, 2024—was due within ninety days, or by July 17, 2024.  (*Id.*).  Based on these dates, Defendants argue that Plaintiffs submitted a belated notice of claim for the alleged malicious prosecution of plaintiff Okoro's October 2021 arrest and the July 2023 citation—i.e., the March 19, 2024 notice of claim came twenty-two months *after* the May 18, 2022 deadline, and six days *after* the March 13, 2024 deadline.  (*Id.* at 8).  As to the malicious prosecution of the October 2023 citation, Defendants assert that this claim did not accrue until *after* Plaintiffs submitted their March 19, 2024 notice of claim because the citation remained active until its dismissal on April 17, 2024.  (*Id.*).  Thus, Plaintiffs "could not have included that claim" in their March 19, 2024 notice.  (*Id.*).

Plaintiffs allege that they served a "Notice of Tort Claim" on Irvington Township with a

11

cover letter that—based on the attachment to the Complaint—is dated March 19, 2024.  (Compl. ¶ 46; D.E. No. 1-19).  Although Plaintiffs purport to attach proof that it served the "Notice of Tort Claim," the exhibit attached to the Complaint does not include a "Date of Delivery" in the appropriate field.  (D.E. No. 1-20).  Despite these shortfalls, because Plaintiffs do not allege that they served any additional notices and because Plaintiffs effectively concede that the Notice of Tort Claim covered—at minimum—the two latter prosecutions recited above, the Court will assess Defendants' arguments for all three incidents: the October 2021 arrest of plaintiff Okoro, the July 2023 citation, and the October 2023 citation.[7]

Plaintiffs oppose the dismissal of Count Thirteen in-part.  (Opp. Br. at 3–4).  First, Plaintiffs do not address or argue against the dismissal of a malicious prosecution claim regarding plaintiff Okoro's October 2021 arrest.  (*See generally id.*).  The Court finds, however, that whether this claim accrued upon plaintiff Okoro's arrest in October 2021 or when the ECPO dismissed the charges in February 2022, is of no moment.  Indeed, under either date, Plaintiffs' March 19, 2024 notice is untimely.  Thus, Count Thirteen is **DISMISSED** to the extent it raises a malicious prosecution claim regarding plaintiff Okoro's October 2021 arrest.

Next, Plaintiffs "agree[]" that the "arrent [*sic*] and prosecution of plaintiff, Mr. Charles Okoro, in July 1, 2023, which was dismissed on March 13, 2024 was time barred for Plaintiffs' Notice of Claim served on March 19, 2024."  (*Id.* at 3).  This concession appears to conflate the October 2021 arrest of plaintiff Okoro and the July 1, 2023 citation.  (*See id.*).  It also states, contrary to the Complaint, that the dismissal of the July 2023 citation occurred on March 13, 2024.[8]

---

[7]    In any forthcoming amended pleading, Plaintiffs shall specify the claims that are the subject of the Notice of Claim and clarify the date of service.

[8]    Indeed, "March 13" does not appear anywhere in the Complaint.  (*See generally* Compl.).

(*See generally* Compl.).    Instead, the Complaint establishes that the July 2023 citation was dismissed on December 13, 2023.  (*Id.* ¶ 43).  Although difficult to decipher, the Court interprets Plaintiffs' opposition brief to concede that the alleged malicious prosecution of the July 2023 citation accrued, at the latest, on the date of its dismissal—*i.e.*, December 13, 2023—making notice due by March 12, 2024.[9]  It follows that if the claim accrued on the date of the citation—July 1, 2023—the deadline was even earlier, that is, September 29, 2023.  Under either interpretation, because Plaintiffs served their notice of claim on March 19, 2024, Count Thirteen is **DISMISSED** as it pertains to the July 2023 citation.

Finally, Plaintiffs disagree with Defendants' analysis regarding the October 2023 citation. (Opp. Br. at 3–4).  However, contrary to their purported disagreement, and in line with Defendants' position, Plaintiffs state that the ninety-day deadline "to file a Notice of Claim started to run from April 17, 2024 and ended on July 17, 2024." (*Id.* at 4).  They then assert that "the law does not bar plaintiff from serving a Notice of Claim prior to April 17, 2024." (*Id.*).  In addition, Plaintiffs made other arguments that relate to the municipal court's finding and the certificate of occupancy at issue—yet these assertions are untethered to the appropriate accrual date and notice period. Regardless of these ambiguities, the Court finds that a malicious prosecution claim regarding the October 15, 2023 citation accrued, at the earliest, on the date the citation issued—rendering notice due by January 15, 2024.  At the latest, the claim accrued on the date of dismissal—April 17, 2024—rendering notice due by July 16, 2024.[10]  Plaintiffs fail to cite case law in support of their broad assertion that nothing barred them from serving a notice *before* the alleged April 17, 2024 accrual date.  Indeed, if a tort claim does not yet legally exist, then what would a pre-accrual notice

---

[9]        Defendants' ninety-day calculation appears off by one day.

[10]       Defendants' ninety-day calculation appears off by one day.

provide "notice" of?   Accordingly, because Plaintiffs served their notice of claim on March 19, 2024, the Court finds that Plaintiffs' malicious prosecution claim for the October 2023 citation fails under either accrual period.  Thus, Count Thirteen is **DISMISSED** as it pertains to the October 2023 citation.

In light of the discrepancies noted above with respect to Plaintiffs' arguments, along with Plaintiffs' failure to address the exception to the ninety-day notice requirement, *see* N.J. Stat. Ann. § 59:8-9, the Court dismisses Count Thirteen *without prejudice.  See Rolax v. Whitman*, 53 F. App'x 635, 638 (3d Cir. 2002) (noting that Section 59:8–9 "allows a court to extend the notice period up to one year if the public entity or employee would not be 'substantially prejudiced' by the delay and the claimant shows 'extraordinary circumstances for his failure to file notice' within the proper time period").

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Counts Six and Thirteen is **GRANTED**, and those claims are **DISMISSED** *without prejudice*.  Counts One, Four, and Twelve are deemed **WITHDRAWN** and Plaintiffs shall file an amended pleading that reflects the same. The balance of Defendants' Motion is **DENIED** as moot.  An appropriate Order accompanies this Opinion.

_s/ Esther Salas_
**Esther Salas, U.S.D.J.**